**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------×
DANIEL CALIGIURI,

              *Plaintiff,*                                    **19 CV 10818**

      *v.*

                                                      **COMPLAINT**

CITY OF NEW YORK,
                                                      **Jury Trial Requested**

              *Defendant.*
-------------------------------------------------------------------------×

      Plaintiff Daniel Caligiuri, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant the City of New York (the "City") as follows:

**PRELIMINARY STATEMENT**

      1.      The New York City Police Department ("NYPD") refused to hire Dr. Daniel Caligiuri because it perceived him to be disabled due to having cardiac stents, which are tubes a doctor places in arteries to help keep them open and restore the flow of blood. In and around December 2017, Dr. Caligiuri applied for a position as Police Surgeon with the NYPD. Around January or February 2018, the NYPD conducted an interview with Dr. Caligiuri. Around June or July 2018, the NYPD conducted a second interview with Dr. Caligiuri. On September 14, 2018, the NYPD emailed Dr. Caligiuri to confirm that he was hired as Police Surgeon, and that he was expected to attend orientation on October 9, 2018. However, three days later, Dr. Caligiuri received a call from the NYPD informing him that his orientation was canceled, and that he was on medical hold. From September 2018 to December 2018, Dr. Caligiuri attempted to contact the NYPD multiple times to inquire about his medical hold. The NYPD only informed him that he was "still on medical hold." Several months passed and on March 19, 2019, Dr. Caligiuri sent a letter to Dr. Kleinman, the Police Commissioner, and the Chief of Personnel, kindly requesting to inform him of the NYPD's decision to release or stay his medical hold. That same week, Dr.

1

Caligiuri received a notice from the NYPD dated March 22, 2019, in which it explained that after a medical evaluation by a Department Surgeon, the NYPD identified a medical condition that allegedly interfered with his current ability to perform the essential functions of the position of Police Surgeon and was proposing to disqualify him from this position. The medical condition cited was Dr. Caligiuri having cardiac stents. Ultimately, the NYPD withdrew Dr. Caligiuri's offer because he has cardiac stents.

2. Dr. Caligiuri seeks damages and costs against Defendant the City for terminating and/or denying him employment based on the false perception that he suffers from a disability arising from cardiac stents, in violation of Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290 *et seq.,* and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

## JURISDICTION

3. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the ADA.

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

6. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC). The

EEOC issued a Right-to-Sue letter dated November 8, 2019, relating to the discriminatory acts described in this Complaint.  This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Plaintiff, at all times relevant hereto, was and is a resident of Nassau County in the State of New York.

9. Upon information and belief, at all times relevant hereto, Defendant was and is a municipal corporation organized under the laws of the State of New York.  The City maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City.

## STATEMENT OF FACTS

10. In and around December 2017, Dr. Caligiuri applied for a position as Police Surgeon with the NYPD.

11. Around January or February 2018, the NYPD conducted their first interview with Dr. Caligiuri.

12. Around June or July 2018, the NYPD conducted their second interview with Dr. Caligiuri.

13. The NYPD also conducted various and required investigations into Dr. Caligiuri's personal history, including his medical documentation, employment information, educational

records and financial information, such as his tax returns and business records, all of which he provided to the NYPD Office of Personnel.

14. On or about September 14, 2018, Sheryl Deal, Principal Administrative Associate in the Staffing Administration Section of the NYPD, emailed Dr. Caligiuri to confirm that the NYPD indeed hired him as Police Surgeon.

15. In this email, Ms. Deal also informed him that, on October 9, 2018, Dr. Caligiuri was to arrive at 1 Police Plaza, 8th floor, at the Civil Hiring Unit to be sworn in and start orientation.

16. Three days later, however, on or about September 17, 2018, Dr. Caligiuri received a phone call from the NYPD informing him that his orientation was cancelled, and he was on a medical hold.

17. From September 2018 to December 2018, Dr. Caligiuri called the NYPD on many occasions to inquire about his medical hold, as he was not told the reasoning for it nor the length.

18. In response, the NYPD only told him that he was still on medical hold.

19. In December 2018, 15 months after applying for the position at the NYPD, Dr. Caligiuri wrote a letter to El. J. Kleinman, Chief Surgeon, in which he asked for an update on his medical hold, as he was still interested in the position.

20. Dr. Caligiuri received no response from Dr. Kleinman or the NYPD.

21. From December 2018 to March 2019, Dr. Caligiuri called the NYPD and was told that he was "still on medical hold."

22. On March 19, 2019, Dr. Caligiuri sent a letter to Dr. Kleinman, the Police Commissioner, and the Chief of Personnel, in which Dr. Caligiuri explained the foregoing and requested that he kindly inform him of the NYPD's decision to release or stay his medical hold.

23. That week, Dr. Caligiuri received a Notice of Proposed Disqualification, dated March 22, 2019, from Inspector and Commanding Officer, Edward Winski.

24. The notice explained that, after a medical evaluation by a Department Surgeon, the NYPD identified a medical condition that allegedly interfered with Dr. Caligiuri's current ability to perform the essential functions of the position of Police Surgeon and was proposing to disqualify him from this position.

25. The medical condition Mr. Winski cited was him having cardiac stents.

26. Dr. Caligiuri's having cardiac stents did not in any way prevent him from performing the essential functions of a Police Surgeon.

27. The notice asked that Dr. Caligiuri submit additional information to demonstrate his medical fitness for the position.

28. On March 24, Dr. Caligiuri wrote Mr. Winski a letter in which he explained that as a current physician and surgeon, he successfully practiced job duties similar to Police Surgeon nearly every day.

29. In fact, he explained that he had even treated many police officers throughout his career.

30. Dr. Caligiuri also informed Mr. Winski that, to appeal the preliminary disqualification, he would have his medical test results and police surgeon evaluation reviewed by cardiologist, Augusto D. Paiusco, M.D.

31. On March 30, Dr. Caligiuri signed a medical authorization which allowed his medical fitness test (performed by the NYPD) and records to be released from the NYPD to Dr. Paiusco.

32. Dr. Paiusco reviewed his EKG, echocardiogram and stress test, and noted that they were all normal.

33. On April 18, Dr. Paiusco wrote a letter to Mr. Winski in which he informed the NYPD that Dr. Caligiuri's tests were normal, he was healthy, and HAD never suffered a myocardial infarction (heart attack).

34. Nonetheless, on May 13, Dr. Caligiuri received an email from the NYPD's Medical Review Unit informing him that he was not selected for the position of Police Surgeon due to him having cardiac stents.

35. The NYPD, however, had already selected and hired him on September 14, 2018.

36. The NYPD terminated Dr. Caligiuri because it regarded him as disabled upon discovery of his cardiac stents.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Wrongful Termination in Violation of ADA

37. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 36 with the same force as though separately alleged herein.

38. The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of a perceived disability.

39. Defendant discriminated against Plaintiff on the basis of his perceived disability by terminating his employment based on his disability.

40. As such, Defendant has violated the ADA.

41. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of NYSHRL

42. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

43. The NYSHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of perceived disability.

44. Defendant discriminated against Plaintiff based on a perceived disability by terminating his employment.

45. As such, Defendant has violated the NYSHRL.

46. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

## THIRD CAUSE OF ACTION
### Wrongful Termination in Violation of NYCHRL

47. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 46 with the same force as though separately alleged herein.

48. The NYCHRL prohibits an employer from discriminating against an employee in terms, conditions, and privileges of employment on the basis of disability or perceived disability.

49. Defendant violated the NYCHRL when it terminated Plaintiff's employment based on his perceived disability.

50. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, economic loss, emotional distress damages, attorneys' fees and costs, and damages to be determined at trial;

B. For the second cause of action, economic loss, emotional distress damages, attorneys' fees and costs and damages to be determined at trial;

C. For the third cause of action, economic loss, emotional distress damages, attorneys' fees and costs and damages to be determined at trial; and

D. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 21, 2019

By: */s/ Edgar Rivera*
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
381 Park Avenue South, Suite 1220
New York, NY 10016
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*